Allen P.
delivered the opinion of the court:
The plaintiff in error was indicted in the Hustings court of the city of Bichmond on the 18th day of February 1861; and the trial at the instance of the accused, was postponed until the March term of said court. At that term when the cause was called for trial, and after the same was pronounced to be ready for trial, the accused moved the court to quash the venire facias y because it had not been issued more than twenty days before the said term of the court, and for other errors alleged to be apparent on the face of the writ, but not mentioned by the counsel or the accused. The motion was overruled; and the prisoner excepted.
The Code of 1860, cli. 208, § 5, p. 836, provides that if a person accused of felony be not tried at the term of a superior court, to which he is remanded for trial, the clerk thereof shall, at least twenty days before any subsequent term that the case remains pending, issue a venire facias for his trial, returnable,. &c. The same Code, ch. 105, § 14, p. 828, directs the,clerk of a county or corporation court which determines that a person ought to be tried in a Circuit court, as soon as may be to issue a venire facias directed to the officer of the court in which the trial is to be.
It seems to me that both of these provisions are directory to the officer, and not intended for the benefit of the accused, except so far as a compliance with the provisions of the statute may tend to ensure a speedy trial. In one case as twenty days may not intervene between the examining and circuit courts, the clerk of the examining court is to issue the writ as soon as may be, so as to enable the officer to summon a proper venire before the term of the circuit court. In the other case where the trial is postponed at the first term of the circuit court, the law makes it the duty of the clerk of that court, at least twenty days before a subsequent term, to issue a *535 venire facias ; tbe object being to remind tbe clerk of fche necessity of issuing the writ in time for tbe proper officer to execute it. All tbat tbe accused can require is, tbat it shall have been issued and executed, so tbat tbe trial may be bad at tbe proper term, and tbe writ be executed in such time, tbat be may if be request it, be furnished with tbe list of jurors summoned for bis trial. Tbat list be is entitled to; but not before tbe first day of tbe term; tbat being the return day of tbe court, unless tbe court has directed it to be returnable on some other day.
It is further objected to tbe venire facias tbat it annexes a condition to tbe persons to be summoned not warranted by law, whereby a class of qualified jurors is excluded, and so tbe range of selection narrowed. Tbe writ requires tbe officer to summon twenty-four good and lawful men, freeholders of- bis corporation, each one of whom is twenty-one years of age, and owns property, real or personal, of tbe value of one hundred dollars at least. By tbe Bev. Code of 1819, p. 601, § 9, tbe officer was required to summon twelve good and lawful men, freeholders of bis county or corporation.
Tbe act of February 24,1846, sess. acts p. 62, super-added tbe qualification of being possessed of visible estate real or personal, of tbe value of five hundred dollars.' Tbe act of 1847-8, sess. acts p. 148, § 5, reduced this property qualification to three hundred dollars. Tbe Code, cb. 162, § 1, provided tbat no person should be qualified to serve upon a petit jury in any proceeding, civil or criminal, unless be was twenty-one years of age, and owned property, real or personal, of tbe value of one hundred dollars. This section being tbe 1st section of chapter 162, together with several other sections of tbe same chapter of tbe Code, was repealed by the 39th section of tbe act of April 9, 1853, sess. acts p. 47. Tbe first section of tbe act of 1853, p. 43, provides tbat all *536 ^1'66 w^e ma^e persons who are twenty-one years of age, and not over sixty shall be liable to serve as jnrors except as herein provided. By the 2nd section of the ae£ certain officers of government, &c., were exempted. ■By the 28th section of tire same act, p. 46, it is enacted that nothing contained in the preceding sections shall apply to the empanneling of juries in cases of felonies, hut the jurors shall be called, chosen, sworn and empanneled for the trial of every case of felony according to chapter 208, of the Code of Ya., concerning juries in such cases. The provisions of this act have been incorporated in the Code of 1860, pp. 687, 691, ch. 162, §§ 1, 27, and p. 835, ch. 208, § 4.. The 1st section, as we have seen, dispenses with the property qualification entirely; and the 39th section repeals the first section of ch. 162, of the Code requiring such qualifications; and the 28th section declares that nothing contained in the sections preceding shall apply to the empanneling of juries in cases of felonies, but the jurors shall be called, chosen, sworn and empanneled according to chapter 208 of the Code. The Code, chap. 208, § 4, p. 774, provides that in a ease of felony the writ of venire facias shall command the officer to summon twenty-four freeholders residing remote, cfic., “and qualified in other respects to serve as jurors.” If the act of 1853 had contained no other provisions bearing on this question it might have been argued with great force, that although.the first section dispensed with the property qualification in terms sufficiently broad to cover criminal as well as civil cases, yet that as the 28th section- declared that the preceding sections should not apply to the empanneling of juries in cases of felonies, that the property qualification was intended to be retained in such Cases, and that the 4th section of chapter 208, of the Co'de, referred to as furnishing the rule, must be construed as if the law in this respect remained unchanged by the act of 1853, dispen *537 sing with the property qualification generally. That the phrase in that section “ qualified in other. respects to serve as jurors,” comprehended all things essential to the qualifications of jurors by the common law where unaltered or by statutes then in' force. But the act of 1853 did not stop with the enactments referred to. By a subsequent section- it expressly repealed the statute requiring a property qualification. There is therefore no law in force requiring a property qualification upon which that clause can operate. It may be satisfied however by referring it to the various common law provisions touching the qualifications of jurors, and such statutory provisions as remain in force; as for'instance the disqualification to serve as a juror resulting from a conviction for perjury, &c. I think therefore that the only property qualification intended to be retained, is that designated in the 4th section of chapter 208, which enacts that the venwe facias shall command the. officer to summon twenty-four freeholders. If freeholders, and qualified in other respects according to the common law where applicable and statutes still in force, the freeholder is a proper juror, though his property, real and personal, may not be of the value of one hundred dollars.- The defect in the writ appearing on the face of it, a motion to quash was the proper mode of taking advantage of it. MeWhirts case, 3 Gratt. 594. In that, case a writ of venire facias was quashed by the order of the court without the consent of the prisoner, because the prisoner, who had been indicted jointly with others, had elected to be tried separately, and the writ had directed a venwe to be summoned for the trial of all jointly indicted.
Nor do I regard it material to the question whether this mandate of the writ was regarded by the officer or not. The presumption is that he confined himself to the mandate of the writ, and summoned only such as *538 he was thereby required to summon. Nor in such case can the accused be required to show he has been injured by the error of the officer issuing the writ. The summoning officer has been required to exclude from the jury persons who by law the prisoner was entitled to have as his triers, and if the writ may thus limit the range of selection, the trial of offences would be confined to such persons as the clerk thought proper to designate. Ho such power has been entrusted to any functionary, and not being authorized by law, the court erred in overruling the motion to quash.
Hor does the omission to-point out the error-in the court below preclude him from raising the objection here. lie moved to quash for one defect which was specified, and other errors alleged to be apparent on the face of the paper. The motion raised every objection to the writ for matter apparent on the face of it. It is the duty of the commonwealth through her officers, to conduct her prosecution according to law; and no obligation rests on the accused to point out errors for the benefit of the commonwealth. I think the court erred in overruling the motion to quash the venwe facias, and for this error the judgment should be reversed.
The petitioner in his assignment of errors, and by his counsel in argument here, contends that there was error in the instruction given by the court at the instance of the attorney for the commonwealth, upon the whole evidence as set forth in the fifth bill of exceptions. The instruction is somewhat ambiguous, leaving it doubtful whether the court intended to say that the,guilty knowledge was a legal presumption which the jury were bound to deduce from the facts set forth, unless rebutted by the evidence, or -as furnishing a strong presumption of the fact of guilty knowledge which if unexplained or rebutted might warrant a verdict of guilty. I think the terms used implied that the court intended to in *539 struct the jury that the facts set forth if not rebutted, raised a legal presumption of the further fact of guilty knowledge, which bound the jury to find the prisoner guilty. And this it is fair to infer, was the belief of the jury; for it appears by the sixth bill of exceptions, that after the case had been committed to the jury, they came into court the next day and enquired, if they must take the instruction of the court as law, and were informed they were, in the opinion of the court, so bound; but they must consider and decide upon the evidence in the case. Thus limiting the jury to the enquiry whether the evidence proved the facts set forth in the instruction; and if they were satisfied that those facts were established, that they raised of themselves the legal presumption of guilty knowledge, and the jury should find the prisoner guilty.
The question how far a jury is bound to presume guilt or a guilty intent from any state of facts, is involved in very great doubt by the authorities. The various decisions on the subject are reviewed and commented on by Bishop on criminal law, §§ 248, 249 and 513; 2 Starkeys Ev. part 2,928 note p; 3 Arch. Crim. Prac. 550; and Best on presumptions eh. 1,2,3. By one elementary writer it is said that where the policy of the law and ends of justice require that a presumption should be made, the jury should be told they ought to make the presumption, unless some evidence be given to the contrary; it should not be put to them as a matter of discretion. Larceny for example, it is said, is inferred from the recent possession of stolen property. Best on presumption, ch. 3, § 40. Starkey ubi supra,, says that though the fact of a connection between the recent possession of stolen property by the accused, with the fact that he stole it, are usually combined, experience shows that this connection, although usual, is not necessary. BTo artificial weight can be attached to it, and juries do not convict *540 unless fully satisfied of the actual guilt of the prisoner. Artificial presumptions can therefore never be safely established as a means of proof in criminal cases. The author reprobates in proper terms what he calls the abominable and sanguinary statute, 'of 21, Jas. 1, ch. 27, which made the concealment of the bastard child by the mother, evidence that she murdered it.
It is a maxim laid down by all writers on criminal law, that every person must be presumed to intend that which is the immediate and natural consequence of his deliberate acts. And therefore, it is said, that the uttering a forged document is conclusive evidence of an intention to defraud the person who would naturally be affected by it. And the weight of authority would seem to be in favor of that proposition. But the correctness of the rule seems to be controverted by the reasoning of Starkey wbi supra; and Bishop on Grim. Law, § 248, says it is probably impossible to lay down any exact .rule in the present state of the authorities. In homicide it is conceded to be a presumption of law that where the fact of slaying has been proved, malice must be intended; and that all circumstances of justification or extenuation are to be made out by the prisoner unless they appear from the evidence adduced against him. Foster’s O. L. 255, 290. Perhaps in most other criminal prosecutions, the jury instead of being bound down by artificial rules, should be instructed that in the absence of all rebutting evidence, they might fairly make such presumption.
The question of guilty knowledge involved in the present case is of a different character from that of presumed intention from a given state of facts. The guilty knowledge is itself a fact constituting -an essential ingredient of the offence charged. The actual existence of the fact must be proved either directly or by such other facts and circumstances, as when fairly investiga *541 ted by the proper tribunal for the ascertainment of facts, can leave no reasonable doubt that the fact does exist.
The court cannot assume in supposed adherence to any artificial rule of law, that other facts being proved to exist, there is in all cases a legal and necessary connection between such facts and the other fact to be presumed. The determination rests exclusively with the jury; and they must decide truly according to their own convictions upon a consideration of all the evidence before them. From a state of facts being proved to exist to their satisfaction, such as those detailed in the bill of exceptions, most men disposed to act fairly would deduce the fact of guilty knowledge as being satisfactorily established; and so that the offence charged was proved beyond all reasonable doubt. But evidence of general good character might tend to rebut the presumption. And under peculiar circumstances tifié general presumption of innocence until guilt was proved might have the like effect. The weight of such evidence and presumption in any case is to be determined by the jury alone. The proof of such facts as those set out in the instruction, in the absence of every thing to contradict or explain them, might in general be sufficient to warrant a conviction; yet as was remarked by the judge in his opinion in Spencer's case, 2 Leigh 751, 756, it would ,not bind the jury with conclusive force. It is nothing more than a high degree of presumptive proof; and that in some cases of presumptive proof the inferences would be very strong and irresistible, in others weak and wholly inconclusive. And in all cases the jury are to weigh the circumstances and draw from them what inferences they may warrant.
The instruction as given did not leave the jury such liberty; it constrained them, paying a proper respect to the opinion of the court, to draw the inference of guilt as a legal presumption, from the facts as set forth, if *542 they believed them, unless that presumption was rebut-ted. Deciding in effect that if such facts were found by a special verdict, supposing a special verdict proper in a criminal case, the court would presume from them the additional fact of guilty knowledge necessary to make out the crime, though such fact was not expressly found. I think the instruction was erroneous, and if asked for in the same terms should not be given.
Judgment eevebsed.